UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT HOPPLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22 CV 1101 RWS |
| | ) |
| HEATHER SMITH, LPN in her individual capacity, | ) |
| | ) |
| REMINGTON APPEL, in his individual capacity, and | ) |
| | ) |
| TIMOTHY WALKER, in his individual capacity, | ) |
| | ) |
| Defendants. | ) |

# ORDER AND MEMORANDUM

In 2018, Plaintiff Robert Hopple was a pretrial detainee at the St. Francois County Jail in Farmington, Missouri. In this lawsuit Hopple alleges that two correctional officers purposely placed him in a cell with two other detainees to allow Hopple to be assaulted by the detainees in violation of the Fourteenth Amendment of the United States Constitution. Hopple also alleges that, after the assault, the jail nurse was deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment. Hopple asserts his claims against the nurse and the correctional officers under 42 U.S.C § 1983. All three Defendants

have moved for summary judgment. Because there are genuine issues of material fact that need to be resolved I will deny the motions for summary judgment.

*Background*

St. Francois County is a political subdivision of the State of Missouri and is responsible for the actions, policies, and procedures of the St. Francois County Sheriff's Office. The Sheriff's Office is responsible for the operations of the St. Francois County Jail. St. Francois County receives federal funds to assist with jail operations, including funds to house federal detainees. Defendant Heather Smith is a St. Francois County employee working as a Licensed Practice Nurse at the jail. Defendants Remington Appel and Timothy Walker were deputy sheriffs working as correctional officers at the jail in the relevant time period.

Plaintiff Hopple was a pretrial detainee at the St. Francois County Jail from May 4, 2018 through October 23, 2018. He had been charged with sexual misconduct involving a minor. Those charges were later dropped by the St. Francois Prosecuting Attorney. Hopple was housed in C-D pods in which individuals charged with sexual offenses were housed. Defendant Appel testified in his deposition that pretrial detainees accused of sex crimes against children were housed in C-D pods separate from the general population to keep them from being targeted by the "regular" detainees. [ECF # 80-2 at 2-4] He also testified jailers

2

were aware of the charges against individual detainees through a booking sheet that is reviewed by jailers at the beginning and during each work shift.  [<u>Id.</u> at 4]

Hopple alleges that a few months into his detention Appel and Walker removed Hopple from his cell in C-D pod and took him to the general population A pod and placed him into a cell where two other detainees were waiting for him. Hopple alleges that the officers did not have a legitimate reason for moving him. Hopple alleges that the officers moved him to the cell for the express purpose of facilitating an assault against Hopple or that they were deliberately indifferent to the serious risk of harm the detainees in the cell posed to Hopple.  The detainees immediately began hitting and kicking Hopple's head and face.  The assault continued for approximately ten minutes until the Appel and Walker returned and escorted Hopple back to his previous pod.  Hopple had heard that detainees charged with sexual misconduct involving a minor have been targeted for assault by general population detainees, sometimes with the help of correctional officers.

After the attack both of Hopple's eyes were blackened, his face was badly bruised, his front tooth had been knocked out, approximately seven more teeth were knocked loose, and his mouth bled incessantly.  Hopple repeatedly asked the jail nurse, Defendant Smith, for pain treatment and dental care but his requests were denied or ignored.  Hopple alleges that for three days he remained in extreme and obvious amounts of pain, that he was in and out of consciousness in his cell,

and that he was forced to scream for medical help. Smith and the other jail staff ignored his cries for help. He never was seen by a doctor and never received any pain medication after his assault.

Hopple asserts Fourteenth Amendment claims against all three defendants.

*Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on their pleadings but must produce sufficient evidence to support the existence of the essential elements of their case on which they bear the burden of proof. Id. at 324.

In resisting a properly supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th

4

Cir. 2004). They "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Rather, "[t]hey must show there is sufficient evidence to support a jury verdict in their favor." Nat'l Bank of Comm. v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "[W]here specific facts are alleged that if proven would call the credibility of the moving party's witness into doubt, summary judgment is improper, especially when the challenged testimony is an essential element of the plaintiff's case." United States v. Real Prop. Located at 3234 Washington Ave. N., Minneapolis, Minn., 480 F.3d 841, 845 (8th Cir. 2007) internal quotations and citation omitted).

### *Discussion*

"Pretrial detainee § 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment prohibition of cruel and unusual punishment." Holden v. Hirner, 663 F.3d 336, 341 (8th Cir. 2011). As a practical matter pretrial detainees "are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007). See also Smith v. Lisenbe, 73 F.4th 596, 600 (8th Cir. 2023) ("a pretrial detainee receives at least the same protections that convicted prisoners receive under the Eighth Amendment.") (cleaned up).

5

*Defendants Appel and Walker*

Defendants Appel and Walker assert that they are entitled to qualified immunity as a defense against Hopple's claims. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation omitted).  To determine whether a party is entitled to qualified immunity, courts conduct a two-part inquiry: "(1) whether the facts, viewed in the light most favorable to [the non-moving party], demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." Ryno v. City of Waynesville, 58 F.4th 995, 1004 (8th Cir. 2023).

A pretrial detainee has a clearly established constitutional right to be protected from harm from jail conditions that pose a substantial risk of serious harm that jail officials know about but disregard or ignore. Schoelch v. Mitchell, 625 F.3d 1041, 1046 (8th Cir. 2010).  "[T]he eighth amendment's prohibition against cruel and unusual punishment requires prison officials to take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners." Young v. Selk, 508 F.3d 868, 871 (8th Cir. 2007) (internal quotation omitted).

"To establish prison officials failed to prevent harm, a pretrial detainee first must prove he was incarcerated under conditions posing a substantial risk of serious harm. This is an objective requirement to ensure the deprivation is a violation of a constitutional right. Second, [the detainee] must establish the prison officials were deliberately indifferent to inmate health or safety. This is a subjective requirement, mandating the prisoner prove the official both knew of and disregarded an excessive risk to inmate health or safety." Holden, 663 F.3d at 341 (cleaned up).

The timing and circumstances surrounding Hopple's assault and the inferences to be drawn therefrom establish that Hopple has presented sufficient evidence to present his claims to a jury. Appel and Walker removed Hopple from his cell in the C-D pod housing detainees charged with sexual crimes and placed him in a cell in the general population A pod.[1] There was no explanation why Hopple was being moved. Appel was aware that Hopple was housed in C-D pod where detainees accused of sex crimes against children were housed. Appel also testified that these types of detainees were housed in C-D pod to keep them from being assaulted by "regular" detainees. Appel also testified that jailers were aware of the charges against individual detainees through a booking sheet that is

---

[1] Appel and Walker deny that they were involved in this incident. Hopple asserts that they were involved. "A party's own testimony is often self-serving, but the mere fact that [a claimant's] factual testimony is favorable to his legal claim does not render it incompetent." Argenyi v. Creighton Univ., 703 F.3d 441, 446 (8th Cir. 2013)  Who took Hopple to the cell where he was assaulted is a material fact issue that needs to be resolved by the trier of fact.

7

reviewed by jailers at the beginning and during each work shift. Upon being placed in the cell Hopple was the immediate victim of a violent assault by two unknown fellow detainees. Within a few minutes Appel and Walker retrieved Hopple from the cell and returned him to his cell in C-D pod. The inferences that can be drawn from this evidence is that Appel and Walker either deliberately moved Hopple to the cell in A pod to be assaulted or that they were deliberately indifferent to the serious risk of substantial harm by their action. As a result, I will deny Appel and Walker's motion for summary judgment.

*Defendant Smith*

Defendant Heather Smith, the jail nurse, has also moved for summary judgment based on qualified immunity. "The failure to provide proper medical treatment to a prisoner violates the eighth amendment when the medical provider is deliberately indifferent to the prisoner's serious medical needs. Deliberate indifference requires a showing that the medical provider knew of and disregarded a serious medical need. A medical need is serious when it has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Phillips v. Jasper Cnty. Jail, 437 F.3d 791, 795 (8th Cir. 2006) (internal citations omitted). It is clearly established that "a complete failure to treat an extremely painful (or other serious)

8

condition displays a reckless indifference to a serious medical need." Leonard v. St. Charles County Police Department, 59 F.4th 355, 363 (8th Cir. 2023).

In support of this claim Hopple presents evidence that he was bloodied and bruised after the assault and that his front tooth was knocked out, several of his teeth were loose, he suffered persistent bleeding from his mouth, and he ultimately manually remove two of his teeth that were loose.  In his deposition Hopple testified that the day after the assault, he was still disoriented, but he spoke to Smith while she was making her medication dispensing rounds and informed her that his teeth were badly bleeding and that several of his teeth were so loose he could move them with his finger and tongue.  He had black eyes at the time and his mouth was bleeding.  He requested Tylenol and gauze to help manage the pain. Despite Hopple's appearance and apparent need for medical treatment Smith ignored this request.  Smith told Hopple that he did not have enough money in his commissary account to buy Tylenol.  [ECF # 80-1 at 16-19]  Hopple did not get the opportunity to tell Smith he had been attacked because she did not give him the opportunity to do so when he spoke to her.  [Id. at 28]  Two days later, Hopple made a written request on jail forms for Tylenol and gauze which was ignored. Hopple made several more written requests for treatment for his injuries but received no response from Smith.  On the fifth or sixth day Hopple spoke to Smith and asked for Tylenol.  She told him no and directed him to fill out a form.  He

9

also asked Smith if he could see a dentist for his injuries but she did not respond to his request.  [Id. at 24]  Hopple never received any medical care for his injuries he received in the attack.

Hopple's evidence is sufficient to support a claim of deliberate indifference to a serious medical need claim against Smith.  Hopple asserts that he was obviously bruised, had a missing front tooth and a bleeding mouth when he orally informed Smith about the bleeding in his mouth and his loose teeth.  Not only did Smith not attempt to treat Hopple for his injuries, she failed to even perform of an evaluation of his injuries despite his appearance and complaints.  Hopple's additional medical requests, including asking to see a dentist, were also ignored.  In her motion for summary judgment Smith asserts that Hopple failed to produce evidence that Smith had actual knowledge that Hopple had a serious medical need and was deliberately indifferent to it.  A detainee presenting the injuries Hopple describes would establish a serious medical need so obvious that even a layman would recognize it.  A medical provider in a jail cannot avoid liability by asserting that they did not have any knowledge of, or an appreciation of the extent of, an inmate's injuries if the provider refuses to even evaluate the inmate.  Such a defense is without merit.  As a result, I will deny Smith's motion to for summary judgment.

Accordingly,

10

**IT IS HEREBY ORDERED that** Defendants Remington Appel, Timothy Walker, and Heather Smith's motions for summary judgment [67 and 70] are **DENIED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 17th day of December, 2024.